IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Carolyn G. Burton, | ) | C/A No. 3:11-9-JFA-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| South Carolina Department of Transportation, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

The plaintiff, Carolyn G. Burton ("Burton"), filed this action pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, et seq., against her employer, the South Carolina Department of Transportation ("DOT"), asserting claims of race discrimination and retaliation based upon its failure to promote her. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on the defendant's motion for summary judgment. (ECF No. 24.) The plaintiff filed a response in opposition (ECF No. 30) and the defendant replied (ECF No. 31). Having reviewed the parties' submissions and the applicable law, the court finds that DOT's motion should be granted.

**BACKGROUND**

The following facts are either undisputed or are taken in the light most favorable to Burton, to the extent they find support in the record. Burton, who is African American, began working for DOT in 1986 and, prior to the events at issue here, worked in the Mass Transit Department. In 2006 that department was reorganized and most of its employees were reassigned to other departments. Burton was involuntarily reassigned to new duties in the Business Development Office. Since then,

Burton's attempts to transfer back into the Mass Transit Department have been unsuccessful, although other employees have been hired or promoted into the Mass Transit Department. In 2008, after being passed over for a promotion to a position in Mass Transit, Burton filed an administrative charge of discriminatory failure to promote with the Equal Employment Opportunity Commission ("2008 EEOC Charge"). No litigation resulted from this charge.

In 2009, Terecia Wilson, a Caucasian female, was reassigned to Mass Transit. Unbeknownst to Burton at the time, the lateral transfer of Wilson, who held a Program Manager II position in the Traffic Engineering Department, resulted from a mediated settlement of an administrative charge filed by *Wilson* asserting employment discrimination. When Burton read about Wilson's transfer in the DOT employee newsletter several months later, she again filed an administrative charge of discrimination asserting that she "was denied the opportunity to apply for the position of Program Manager II/Mass Transit" ("2010 EEOC Charge"). She alleged that this act of discrimination and retaliation occurred on March 23, 2010. This litigation followed.

**DISCUSSION**

**A.    Summary Judgment Standard**

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for

*PJG*

summary judgment; the requirement is that there be no *genuine* [dispute] of *material fact*." Ballinger v. N.C. Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir. 1987) (emphasis in original) (internal quotation marks & citation omitted). A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. Id. at 257.

In discrimination cases, a party is entitled to summary judgment if no reasonable jury could rule in the non-moving party's favor. Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 645 (4th Cir. 2002). The court cannot make credibility determinations or weigh the evidence, but the court should examine uncontradicted and unimpeached evidence offered by the moving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). The court must determine whether a party's offered evidence is legally sufficient to support a finding of discrimination and look at the strength of a party's case on its own terms. See id. at 148 (stating that "[c]ertainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational fact-finder could conclude that the action was discriminatory").

**B.     Burton's Claims**

    **1.     Exhaustion of Administrative Remedies**

"Before filing suit under Title VII, a plaintiff must exhaust her administrative remedies by bringing a charge with the EEOC." Smith v. First Union Nat'l Bank, 202 F.3d 234, 247 (4th Cir. 2000); see also 42 U.S.C. § 2000e-5(f)(1). Exhaustion of administrative remedies is a statutory prerequisite to properly invoke the jurisdiction of the federal court. See, e.g., Jones v. Calvert

Group, Ltd., 551 F.3d 297, 300 (4th Cir. 2009) (stating that "a failure by the plaintiff to exhaust administrative remedies concerning a Title VII claim deprives the federal courts of subject matter jurisdiction over the claim"); Davis v. N.C. Dep't of Corr., 48 F.3d 134, 140 (4th Cir. 1995) (stating that "that receipt of, or at least entitlement to, a right-to-sue letter is a jurisdictional prerequisite"); see also 42 U.S.C. § 2000e-5(f).

In the employment discrimination context, courts have interpreted statutory requirements to exhaust administrative remedies to mean that each discrete incident of discriminatory treatment must be administratively exhausted. Martinez v. Potter, 347 F.3d 1208, 1210 (10th Cir. 2003) (citing Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 122 (2002)); Jones v. U.P.S., Inc., 502 F.3d 1176, 1186 (10th Cir. 2007). The allegations contained in the administrative charge of discrimination generally limit the scope of any subsequent judicial complaint. King v. Seaboard Coast Line R.R. Co., 538 F.2d 581, 583 (4th Cir. 1976) (stating that a subsequent civil suit "may encompass only the 'discrimination stated in the [EEOC] charge itself or developed in the course of a reasonable investigation of that charge'") (quoting Equal Employment Opportunity Comm'n v. Gen. Elec. Co., 532 F.2d 359, 365 (4th Cir. 1976)); see also Smith, 202 F.3d at 247 ("A plaintiff's EEOC charge defines the scope of her subsequent right to institute a civil suit."). Only those claims stated in the initial administrative charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent lawsuit. Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 963 (4th Cir. 1996) (affirming the district court's dismissal of some of the plaintiff's claims because they were outside the scope of her original EEOC charge and were therefore time barred).

PJG

The Fourth Circuit has emphasized:

> The filing of an administrative charge is not simply a formality to be rushed through so that an individual can quickly file his subsequent lawsuit. Rather, Congress intended the exhaustion requirement to serve the primary purposes of notice and conciliation.
> First, an administrative charge notifies the employer of the alleged discrimination. This notice gives the employer an initial opportunity to voluntarily and independently investigate and resolve the alleged discriminatory actions. It also prevents the employer from later complaining of prejudice, since it has known of the allegations from the very beginning.
> Second, the exhaustion requirement initiates agency-monitored settlement, the primary way that claims of discrimination are resolved.

Chacko v. Patuxent Inst., 429 F.3d 505, 510 (4th Cir. 2005) (citations omitted). "Allowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumscribe the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge, as surely as would an initial failure to file a timely EEOC charge." Dorsey v. Pinnacle Automation Co., 278 F.3d 830, 838 (8th Cir. 2002) (internal quotation marks and citations omitted). Therefore, a discrimination suit "is limited to discrimination charged in the report to the EEOC or to discrimination actually found by the EEOC upon investigation of the original charge." Stehle v. Gen. Mills Rest., Inc., 875 F. Supp. 320, 323 (D.S.C. 1994) (Title VII). When a discrimination claim "exceed[s] the scope of the EEOC charge and any charge that would naturally have arisen from an investigation thereof," it is procedurally barred. Dennis v. County of Fairfax, 55 F.3d 151, 156 (4th Cir. 1995) (Title VII).

Moreover, controlling precedent holds that discrete discriminatory and retaliatory acts are not actionable if they are time barred, even when they relate to acts alleged in other timely filed charges. See Morgan, 536 U.S. at 113; Williams v. Giant Food, Inc., 370 F.3d 423, 429-30 (4th Cir. 2004) (holding that a plaintiff alleging a discriminatory failure to promote cannot rely on a

continuing violation or pattern-and-practice theory to litigate earlier discrete acts of discrimination that were not themselves the subject of a timely filed charge). Any claim by Burton based on earlier denials of promotions or transfers into the Mass Transit Department are therefore beyond the scope of her 2010 EEOC Charge and any reasonable investigation that would follow.[1] Accordingly, the only properly exhausted and timely claims before the court are Burton's claims that she was not promoted into the Program Manager II position in Mass Transit instead of Wilson because of her race or in retaliation for filing the 2008 EEOC Charge.

### 2. Failure to Promote Based on 2010 EEOC Charge

A plaintiff may demonstrate discrimination through direct or circumstantial evidence. When direct evidence is lacking, as in this case, a plaintiff may produce circumstantial evidence and proceed under the McDonnell Douglas burden-shifting framework. Warch v. Ohio Casualty Ins. Co., 435 F.3d 510, 520 (4th Cir. 2006); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Pursuant to this framework, once the plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason for the adverse action. Merritt v. Old Dominion Freight, 601 F.3d 289, 294 (4th Cir. 2010) (Title VII). The defendant's burden "is a burden of production, not persuasion." Reeves, 530 U.S. at 142. Once a defendant meets this burden by producing affidavits or testimony demonstrating a legitimate, nondiscriminatory reason, " 'the McDonnell Douglas frame-work—with

---

[1] Additionally, they are beyond the scope of her Complaint filed in the instant case. (See Compl. ¶¶ 8, 12-13, ECF No. 1 at 2; Burton Dep. 46:18-23, ECF No. 24-2 at 26); see, e.g., Bridgeport Music, Inc. v. WM Music Corp., 508 F.3d 394, 400 (6th Cir. 2007) (holding that a party may not expand its claims to assert new theories in response to summary judgment); White v. Roche Biomedical Labs., Inc., 807 F. Supp. 1212, 1216 (D.S.C. 1992) (noting that "a party is generally not permitted to raise a new claim in response to a motion for summary judgment").

PJG

its presumptions and burdens—disappear[s], and the sole remaining issue [is] discrimination *vel non*.' " Id.

In other words, if the defendant meets the burden to demonstrate a legitimate, nondiscriminatory reason, the plaintiff must demonstrate by a preponderance of the evidence that the proffered reason was " 'not its true reason[], but [was] a pretext for discrimination.' " Merritt, 601 F.3d at 294 (quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)). "Notwithstanding the intricacies of proof schemes, the core of every [discrimination] case remains the same, necessitating resolution of the ultimate question of . . . whether the plaintiff was the victim of intentional discrimination." Merritt, 601 F.3d at 294-95.

To establish a *prima facie* case based on an alleged failure to promote, a plaintiff must show: (1) she is a member of a protected class; (2) her employer had an open position for which she applied or sought to apply; (3) she was qualified for the position; and (4) she was rejected under circumstances giving rise to an inference of unlawful discrimination. Evans v. Technologies Applications & Service Co., 80 F.3d 954, 960 (4th Cir. 1996); see also Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 268 (4th Cir. 2005). In support of its motion for summary judgment, DOT challenges Burton's ability to establish the second requisite element.

Courts in the Fourth Circuit analyzing similar situations have recognized that the lateral transfer of an employee in accordance with company policy to fill a vacant position in another area refutes a plaintiff's claim that there was an open position for which she could apply, defeating the *prima facie* case. See Woodard v. Lehman, 717 F.2d 909 (4th Cir. 1983); White v. C & P Tel. Co. of Md., No. 88-2512, 1989 WL 27452, at *1 (4th Cir. Mar. 15, 1989) (Table); Foster v. BNP Residential Properties Ltd. P'ship, C/A No. 2:06-2440-PMD-RSC, 2008 WL 512788, at *11 (D.S.C.

Feb. 25, 2008). Notably, in the case at bar, the position Burton claims she was denied was not even vacant; rather, the unrefuted evidence is that the Program Manager II position was transferred from the Traffic Engineering Department along with Wilson.[2] (Monts-Chamblee Aff. ¶¶ 5, 7-8, 10, ECF No. 24-4 at 3-4; Johnson Dep. 25:7-26:17, 31:19-32:2, 45:16-46:5, ECF No. 24-3 at 6-7, 12-13, 14-15.) Moreover, Burton's argument that the fact that other positions in Mass Transit were filled between 2008 and 2010 is proof that DOT had available positions is unavailing, as she does not dispute that there were no open Program Manager II positions during the relevant time period. See Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 358 n.44 (1977) (noting that the *prima facie* case demands that a plaintiff demonstrate at least that the rejection did not result from the two most common legitimate reasons employers rely on to reject an applicant: lack of qualifications or the absence of a vacancy in the job sought); see also 42 U.S.C. § 2000e-5(e) (requiring, in a deferral state, that a claimant to file a charge of discrimination within 300 days from the alleged discriminatory act or acts); Morgan, 536 U.S. at 114 (stating that discrete acts such as failure to promote constitute a separate actionable unlawful employment practice and only discrete discriminatory acts which took place within the 300-day time limit are actionable); Williams v. Giant Food, Inc., 370 F.3d 423, 429 (4th Cir. 2004) (stating that failure to promote is a discrete act to which the continuing violation doctrine does not apply).

Even if Burton could demonstrate a *prima facie* case of discriminatory or retaliatory failure to promote based on DOT's transfer of Wilson rather than Burton into the Program Manager II

---

[2] To the extent Burton argues that the fact that DOT transferred Wilson shows there was work available that Burton could have performed in Mass Transit, such a position is insufficient to establish the availability of a position. See McNeal v. Montgomery Cty., Md., 307 Fed. Appx. 766, 773 n.3 (4th Cir. 2009) (holding that the fact that an employer could have created a position is irrelevant).

PJG

position, her claims fail because she cannot demonstrate that DOT's proffered legitimate, nondiscriminatory reason is pretextual. DOT has stated that it created the Program Manager II position in Mass Transit—a position that was not already vacant or available and for which it did not recruit or advertise—especially for Wilson to settle *Wilson's* administrative charge of discrimination. Burton has presented no compelling argument challenging this proffered legitimate, nondiscriminatory reason, and other circuits have recognized the settlement of another employee's pending discrimination claim to be a legitimate reason under Title VII. See, e.g., Marcantel v. State of La., Dep't of Transp. & Dev., 37 F.3d 197, 202 (5th Cir. 1994); Carey v. U.S. Postal Serv., 812 F.2d 621, 624 (10th Cir. 1987); see also Boston Police Superior Officers Fed'n v. City of Boston, 147 F.3d 13, 23 (1st Cir. 1998). Rather than challenging the truth of DOT's proffered reason, Burton essentially concedes it, but argues that DOT should have promoted Burton into other available positions in Mass Transit over the years. (Pl.'s Mem. Opp'n Summ. J., ECF No. 30 at 11-12; Burton Dep. 38:2-18, 42-45, 52; ECF No. 24-2 at 20, 22-25, 29.) For the reasons stated above, any claim based on such assertions are outside the scope of Burton's Complaint and 2010 EEOC Charge and are therefore barred. Burton has not presented any evidence from which a reasonable jury could find that DOT's stated reason for transferring Wilson but not Burton to Mass Transit in 2009 was a pretext for unlawful discrimination or retaliation.

**RECOMMENDATION**

For the foregoing reasons, the court recommends that the defendant's motion for summary judgment (ECF No. 24) be granted.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

September 11, 2012
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).